UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ANTHONY MCGEE,<br><br>    Plaintiff,<br><br>  v.<br><br>MILPITAS POLICE DEPARTMENT, et al.,<br><br>    Defendants. | Case No. 23-cv-02559-VKD<br><br>**ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION TO DISMISS**<br><br>Re: Dkt. No. 30 |

Plaintiff Anthony McGee, who is representing himself, sues the City of Milpitas ("City") and the Milpitas Police Department ("MPD") under 42 U.S.C. § 1983 for violations of his Fourth Amendment rights.[1] In a previous order screening Mr. McGee's original complaint pursuant to 28 U.S.C. § 1915(e), the Court concluded that Mr. McGee failed to state a claim on which relief could be granted and directed him to file an amended complaint. Dkt. No. 6. Mr. McGee filed an amended complaint on May 30, 2023. Dkt. No. 7. The Court screened the amended complaint and concluded that Mr. McGee could proceed with this action without prepayment of the filing fee. *See* Dkt. No. 8.

Defendants now move to dismiss Mr. McGee's amended complaint on several grounds. *See* Dkt. No. 30. Mr. McGee did not file an opposition to defendants' motion.

The Court finds this matter suitable for decision without oral argument. Dkt. No. 37; Civil

---

[1] The amended complaint names only the City of Milpitas and the Milpitas Police Department as defendants. *See* Dkt. No. 7 at 1. All named parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 3, 26. The unnamed police officer who arrested Mr. McGee has not appeared in the action.

L.R. 7-1(b). Upon consideration of the moving papers and the applicable law, the Court grants defendant's unopposed motion and dismisses Mr. McGee's amended complaint without leave to amend.

**I.   BACKGROUND**

Unless otherwise indicated, the following allegations are drawn from Mr. McGee's amended complaint.

On March 6, 2023, Mr. McGee was cleaning his car at a gas station in Milpitas when he noticed a police car nearby. Dkt. No. 7 ¶¶ 1-2. The police car pulled up behind Mr. McGee's car and an unnamed MPD officer stepped out of it. *Id.* ¶ 5. The officer approached Mr. McGee and called his name, then asked him to confirm he was Anthony McGee and whether he was "on searchable probation." *Id.* ¶¶ 7-9. Mr. McGee denied that he was on probation but acknowledged that he was on supervised release. *Id.* ¶¶ 10-12. Indeed, Mr. McGee was, and still is, on federal supervised release after serving nearly ten years in federal custody for drug and firearm-related offenses. *See United States v. Anthony McGee*, Case No. 12-cr-00052-EMC, Dkt. No. 235.

The officer then approached Mr. McGee's car, from which Mr. McGee understood the officer intended to search the car. Dkt. No. 7 ¶¶ 13-14. Mr. McGee stepped away from the car. *Id.* ¶¶ 14-15. At this point, a second police officer arrived on the scene and began speaking with the first officer. *Id.* ¶¶ 16-17. The first officer completed an inventory search of Mr. McGee's car and then motioned for Mr. McGee to approach. *Id.* ¶ 18. Mr. McGee complied. *Id.* ¶ 19.

The first officer then informed Mr. McGee that he was being placed under arrest for failing to register as a sex offender. *Id.* ¶ 21. Mr. McGee told the officer that he was not a sex offender, that he was on supervised release after serving a lengthy federal prison sentence, and that he was "already going to court" to address the incorrect accusation that he was a sex offender who had failed to register. *Id.* ¶¶ 22-23. The arresting officer responded that "information in his system" showed that Mr. McGee was a sex offender and had "absconded for the last ten years." *Id.* ¶ 23. The officer advised Mr. McGee that if he disputed the information, he "was going to have to take [it] up with the judge, or whoever was responsible for making those kinds of decisions." *Id.* ¶ 26.

The arresting officer transported Mr. McGee to the Santa Clara County Main Jail, where he

was booked for failure to register as a sex offender. *Id.* ¶¶ 27-28. Mr. McGee's bail was set at $25,000. *Id.* ¶ 31. Mr. McGee's spouse posted his bail and he was released. *Id.* ¶ 32.

Following his release, Mr. McGee contacted the MPD to dispute the existence of any requirement that he register as a sex offender and to demand "his monies back." *Id.* ¶ 35. On May 12, 2023, Mr. McGee says he received a letter from the MPD stating that he "was not able to be held criminally liable for any crime concerning the events in question on the day of March 06, 2023." *Id.* ¶ 38. Mr. McGee does not include the letter with his amended complaint. However, his original complaint attached a letter from the MPD dated May 8, 2023. *See* Dkt. No. 1-2. The May 8 letter does not contain statements that precisely match Mr. McGee's allegations, but the letter's signatory does "certify that the taking into custody of [Mr. McGee] on 03/06/2023 by the Milpitas Police Department was a detention only, not an arrest" and cites California statutes regarding the procedures that apply when an individual is arrested, but released from custody without being charged with an offense. *Id.* (citing Cal. Pen. Code §§ 849, 849.5, 851.6).

After receiving the letter, Mr. McGee "drafted a contract" that he delivered to the Milpitas City Hall, addressed to the City Attorney, in which he appears to have demanded that the City adopt certain "stipulations" and pay him $250,000. *Id.* ¶¶ 40-42.

In his amended complaint, Mr. McGee contends that the arresting officer violated his Fourth Amendment rights by arresting him without probable cause and searching him and his car without reasonable suspicion or probable cause. Dkt. No. 7 ¶¶ 43-48. He claims that the Milpitas City Attorney "condone[d] and support[ed]" the officer's misconduct by "not adjudicating the merits of [his] claim in [a] timely manner." *Id.* ¶ 49. He asks for damages of $300 million, "on account of the egregious violation of Mr. McGee's rights against unlawful searches and seizures." *Id.* at 6. He also alleges that he has endured "emotional pain and suffering," "permanent damage to [his] public image," and "economical ostracization," presumably as a result of the allegation that he is required to register as a sex offender. *Id.*

## II.  LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is appropriate where there is no

1  cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal
2  theory. *Id.* (citing *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In such
3  a motion, all material allegations in the complaint must be taken as true and construed in the light
4  most favorable to the claimant. *Id.*

5  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere
6  conclusory statements, do not suffice," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and "[f]actual
7  allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v.
8  Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). Moreover, the Court is not required to "assume
9  the truth of legal conclusions merely because they are cast in the form of factual allegations."
10  *Prager Univ. v. Google LLC*, No. 17-CV-06064-LHK, 2018 WL 1471939, at *3 (N.D. Cal. Mar.
11  26, 2018) (quoting *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam)).

12  Pro se pleadings are liberally construed and held to a less stringent standard than those
13  drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This is particularly true with
14  respect to the factual allegations in a pro se complaint. *Chambers v. C. Herrera*, 78 F.4th 1100,
15  1108 (9th Cir. 2023). "[A] district court should not dismiss a pro se complaint without leave to
16  amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by
17  amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (cleaned up).

18  Documents appended to or incorporated into the complaint or which properly are the
19  subject of judicial notice may be considered along with the complaint when deciding a Rule
20  12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *Coto
21  Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). A court may take judicial notice of
22  facts that are "not subject to reasonable dispute" because they are "generally known" or "can be
23  accurately and readily determined from sources whose accuracy cannot reasonably be questioned."
24  Fed. R. Evid. 201(b); *see also Khoja*, 899 F.3d at 999. Thus, a court properly may take judicial
25  notice of matters of public record, but cannot take judicial notice of disputed facts contained
26  within such records. *Id.* (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001)).

27
28

### III. DISCUSSION

Mr. McGee asserts a single claim under 42 U.S.C. § 1983 against the City and the MPD for violation of his Fourth Amendment rights. Defendants move to dismiss Mr. McGee's complaint on several grounds. *See* Dkt. No. 30. They also ask the Court to take judicial notice of documents filed in other litigation involving Mr. McGee. *See* Dkt. No. 31.

The Court first addresses defendants' request for judicial notice, and then considers the merits of defendants' motion to dismiss.

#### A. Defendants' Request for Judicial Notice

Defendants ask that the Court take judicial notice of several documents filed in prior criminal and civil actions involving Mr. McGee. As those documents are matters of public record that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," Fed. R. Evid. 201(b), the Court grants defendants' request, but only as to those documents that are necessary to the disposition of the present motion. Accordingly, the Court takes judicial notice of the judgment and other documents in Mr. McGee's federal criminal case, *United States v. Anthony McGee*, Case No. 12-cr-00052-EMC, and the preliminary hearing transcript in his Santa Clara County criminal case, *People v. Anthony McGee*, No. B2300636. The Court does not take judicial notice of disputed facts included in these public records. *Khoja*, 899 F.3d at 999 (citing *Lee*, 250 F.3d at 689).[2]

#### B. 42 U.S.C. § 1983 – Alleged Violations of the Fourth Amendment

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). A claim for civil rights violations under § 1983 requires two essential elements: (1) that a right secured by the Constitution or laws

---

[2] Concurrently with their request for judicial notice, defendants filed an administrative motion to seal. Dkt. No. 32 at 2-3. The Court finds good cause has been shown and grants the motion to seal.

of the United States was violated, and (2) that the alleged violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendants argue that Mr. McGee fails to state a claim against them under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and that probable cause existed for Mr. McGee's arrest and for the search of his person and his vehicle.

### 1. *Monell* liability

Local governments are "persons" subject to liability under 42 U.S.C. § 1983 where official policy or custom causes a constitutional tort. *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 (1978). However, a city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of *respondeat superior*. *See Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 479 (1986).

To impose municipal liability under § 1983 for a violation of constitutional rights, a plaintiff must show that: (1) the plaintiff possessed a constitutional right of which he or she was deprived; (2) the municipality had a policy; (3) this policy amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) the policy was the moving force behind the constitutional violation. *See Plumeau v. School Dist. # 40 County of Yamhill*, 130 F.3d 432, 438 (9th Cir.1997). Liability based on a municipal policy may be satisfied in one of three ways: (1) by demonstrating that a municipal employee committed the alleged constitutional violation under a formal governmental policy or longstanding practice or custom that is the customary operating procedure of the local government entity; (2) by demonstrating that the individual who committed the constitutional tort was an official with final policymaking authority and that the challenged action itself was an act of official governmental policy which was the result of a deliberate choice

6

made from among various alternatives, or (3) by proving that an official with final policymaking authority either delegated policymaking authority to a subordinate or ratified a subordinate's unconstitutional decision or action and the basis for it. *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir.1992). "In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere formulaic recitations of the existence of unlawful policies, customs, or habits." *Johnson v. City of San Jose,* 591 F. Supp. 3d 649, 668 (N.D. Cal. 2022) (cleaned up).

In its prior order screening the original complaint, the Court determined that Mr. McGee failed to state a *Monell* claim for violation of his constitutional rights because he did not allege any unlawful policy, practice, or custom. Dkt. No. 6 at 3. Defendants argue that Mr. McGee's amended complaint "has not remedied this deficiency." Dkt. No. 30 at 6.

The Court agrees with defendants. Mr. McGee's amended complaint includes additional factual allegations about the actions of the arresting officer, but it does not allege that he acted in accordance with an unlawful policy, practice, or custom of the City or the MPD. Mr. McGee does allege that "[t]he City Attorney for [Milpitas] did in fact and law condone and support the decision of the officer's conduct that is the basis for this complaint, by not[] adjudicating the merits of Mr. McGee's claim in [a] timely manner." Dkt. No. 7 ¶ 49. The Court construes this allegation as an attempt to plead a ratification theory of *Monell* liability. While a single decision by a municipal final policymaker may be sufficient to trigger liability under *Monell*, such liability attaches only where "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483. The mere fact that the City Attorney did not accede to Mr. McGee's pre-litigation demands is insufficient to show that he or she acted as a "final policymaker" who ratified the arresting officer's allegedly unconstitutional conduct.

Nothing in the record suggests that Mr. McGee's *Monell* claim could be cured by the allegation of additional facts on amendment, and he has not opposed defendants' motion to dismiss on this ground. Accordingly, the Court dismisses Mr. McGee's § 1983 claim against the City and the MPD without leave to amend.

7

### 2.   Underlying Fourth Amendment Violations

In both his original and amended complaints, Mr. McGee named only municipal entities as defendants, although he described the arresting officer's conduct as unconstitutional. *See* Dkt. Nos. 1, 7. In view of Mr. McGee's pro se status, the Court considers whether he should be permitted to further amend his complaint to assert a claim against the arresting officer or whether any such amendment would be futile.

Mr. McGee alleges that the arresting officer violated his Fourth Amendment rights by unlawfully searching and seizing his person and his car and by arresting him without probable cause. Dkt. No. 7 ¶¶ 43-48. Defendants argue that the allegations of the amended complaint, together with other judicially noticeable facts, show that probable cause existed for Mr. McGee's arrest and that the searches of his person and his car were not unconstitutional.[3]

#### a.   Unreasonable search

Mr. McGee alleges that the arresting officer violated his Fourth Amendment rights by "illegally procur[ing] cause for reasonable suspicion to conduct a criminal background check" and that the searches of his person and his car were unreasonable and violated his Fourth Amendment rights. *Id* ¶¶ 43-45. These allegations cannot support a claim against the officer.

First, police officers do not require reasonable suspicion or other cause to conduct a records check. Indeed, the opposite is true—officers may conduct a criminal or traffic records search to establish reasonable suspicion for a stop or for further investigation. *See Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020) (holding that officer had reasonable suspicion to perform traffic stop when records check showed that the registered owner of vehicle had a revoked driver's license).

Second, as Mr. McGee acknowledges, at the time of search he was on federal supervised release, which is "a form of searchable probation or another form of community supervision."

---

[3] Defendants also argue that Mr. McGee fails to allege a favorable termination of his criminal case, as required by *Heck v. Humphrey*, 512 U.S. 477 (1994), and that the arresting officer (who is not named and has not appeared) is protected by qualified immunity. *See* Dkt. No. 30 at 6-15. The Court finds it unnecessary to reach these arguments.

Dkt. No. 7 ¶¶ 12-13.  The judgment in Mr. McGee's federal criminal case, of which the Court takes judicial notice, confirms that Mr. McGee was required to submit to a search of his person and his car as a condition of his supervised release.  *See United States v. Anthony McGee,* Case No. 12-cr-00052-EMC, Dkt. No. 136 at 4 ("The defendant shall submit his person, property, place of residence, vehicle, or any property under his control to a search.  Such searches shall be conducted by a United States Probation Officer or any federal, state, or local law enforcement officer at any time, with or without any suspicion.").

While supervised releasees have a "diminished expectation of privacy," the fact that Mr. McGee was on supervised release with a search condition does mean that all searches necessarily pass constitutional muster.  *United States v. Kriesel*, 720 F.3d 1137, 1141 (9th Cir. 2013).  Rather, a court must consider "the degree to which the search intrudes upon [Mr. McGee's] privacy" against "the degree to which it is needed for the promotion of legitimate governmental interests." *United States v. King*, 736 F.3d 805, 808 (9th Cir. 2013).  As noted above, Mr. McGee was convicted of serious federal firearm-related offenses, and he does not contend that law enforcement has no legitimate interest in conducting searches of his person or vehicle.  *See United States v. Anthony McGee,* Case No. 12-cr-00052-EMC, Dkt. No. 136 at 1 (listing convictions for 18 U.S.C. §§ 922(g), 924(c); 21 U.S.C. § 841(a)(1)).  More importantly, the search here was not suspicionless or conducted merely to harass Mr. McGee.  *See King*, 736 F.3d at 810.  Instead, the amended complaint alleges that the arresting officer conducted a search of Mr. McGee and his car only after consulting his "system" and learning that Mr. McGee was in violation of a requirement to register as a sex offender.  *See* Dkt. No. 7 ¶¶ 7-23.

In these circumstances, Mr. McGee cannot state a viable claim that the officer's searches were unconstitutional.

### b. Unreasonable seizure

Mr. McGee alleges that the arresting officer also violated his Fourth Amendment rights by arresting him without probable cause.  Dkt. No. 7 ¶¶ 43-48.  This allegation fails as well.

To prevail on a § 1983 claim for false arrest, a plaintiff must show that there was no probable cause for his arrest.  *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir.

9

1998. "An officer has probable cause to make a warrantless arrest when the facts and circumstances within his knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Rosenbaum v. Washoe Cnty.*, 663 F.3d 1071, 1076 (9th Cir. 2011). "Effective and efficient law enforcement requires cooperation and division of labor to function. For that reason, law enforcement officers are generally entitled to rely on information obtained from fellow law enforcement officers." *Motley v. Parks*, 432 F.3d 1072, 1081 (9th Cir. 2005), *overruled on other grounds.*

The amended complaint alleges that the officer arrested Mr. McGee because "the information in his system stated that Mr. McGee was absconded [from his sex offender registration requirements] for the previous ten years." Dkt. No. 7 ¶ 23. Failing to register as a sex offender is a crime. *See* Cal. Pen. Code § 290.018. While Mr. McGee disputes that he qualifies as a sex offender or that he is required to register as such, he does not dispute that the officer arrested him based on records reflecting Mr. McGee was subject to such a requirement and had not complied with it. In these circumstances, there can be no dispute that it was reasonable for the arresting officer to believe that Mr. McGee had committed the crime of failing to register as a sex offender. *See, e.g., Hadsell v. Sickon*, No. 08-cv-1101-MO, 2009 WL 1362597, at *4 (D. Or. May 12, 2009) (probable cause justified arrest when officer obtained information from law enforcement databases indicating plaintiff had failed to timely register as sex offender).

Because probable cause is apparent from the existing allegations in the amended complaint, Mr. McGee cannot state a claim against the arresting officer for arresting him without probable cause.

## IV.   CONCLUSION

For the foregoing reasons, the Court dismisses Mr. McGee's Fourth Amendment claim against the City and the MPD for failure to state a claim. "Such a dismissal, especially for a pro se plaintiff, would normally be without prejudice." *Chambers*, 78 F.4th at 1107. However, in this case, Mr. McGee has not opposed the motion and it is "absolutely clear" from the allegations in the amended complaint that granting leave to amend would be futile. *Id.*

Accordingly, the Court grants the defendants' motion and dismisses Mr. McGee's

amended complaint with prejudice.  The Clerk of Court is directed to close this file.

**IT IS SO ORDERED.**

Dated: October 23, 2023

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge

United States District Court
Northern District of California

11